**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STACY REAVES, | |
| Plaintiff, | Civ. No. 16-4300 (RBK) (JS) |
| v. | |
| UMDNJ, | **OPINION** |
| Defendant. | |

**ROBERT B. KUGLER, U.S.D.J.**

## I.    INTRODUCTION

Plaintiff, Stacy Reaves, is currently confined at the Cape May County Correctional Center

in Cape May, New Jersey.  He is proceeding *pro se* with a civil rights complaint filed pursuant to

42 U.S.C. § 1983.  At this time, this Court must screen the complaint pursuant to 28 U.S.C.

§§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious,

for failure to state a claim upon which relief may be granted, or because it seeks monetary relief

from a defendant who is immune from suit.  For the following reasons, the complaint will be

permitted to proceed in part.  In addition, Plaintiff's motions for the appointment of *pro bono*

counsel are denied without prejudice.

## II.    FACTUAL BACKGROUND

The allegations of this complaint will be construed as true for purposes of this screening

opinion.  Plaintiff seeks to bring a civil rights complaint pursuant to 42 U.S.C. § 1983 against

Defendant University of Medicine & Dentistry of New Jersey ("UMDNJ") for denial of medical

services.  (*See* Dkt. No. 1 at p. 4).  Plaintiff also names the following individuals and entities as

defendants in an exhibit to his complaint:  1) Chris Christie, the Governor of New Jersey; 2) Gary

Lanigan, Commissioner of the New Jersey Department of Corrections ("NJDOC"); 3) Robert

1

Buechele, Administrator at South Woods State Prison ("SWSP"); 4) Rutgers University

Behavioral Health Care ("Rutgers"); 5) Dan DiBenedetti, Corrections Ombudsman; 6) Connie

Karch, Assistant Corrections Ombudsman; 7) Dr. Ralph Woodward; 8) Margret Reed, Acting

Statewide Medical Patient Advocate; 9) Mr. Thomas, a nurse practitioner; and 10) Ms. "T," a nurse

practitioner.[1]  (*See* Dkt. No. 1 at p. 16).

Plaintiff's allegations arise from the treatment he received between August 31, 2014 and

November 11, 2014 while he was incarcerated at South Woods State Prison in Bridgeton, New

Jersey.  (*See id.* at pp. 13-15).  Plaintiff suffers from spina bifida and requires a urethral catheter

to empty his bladder multiple times throughout the day.  (*See id.* at p. 13).  Plaintiff also has a

medical order stating that his condition requires that he be placed in a lower bunkbed.  (*See id.*).

Plaintiff claims that on August 31, 2014, he was placed in detention for a disciplinary

charge.  (*See id.*).  Plaintiff alleges that despite informing numerous officers and the social worker

about his medical condition, he was assigned to the top bunk in Cell 1042.  (*See id.*).  Plaintiff

claims that he was forced to sleep on the floor because he was unable to climb up to the top bunk.

(*See id.*).  Plaintiff was not moved to a lower bunk until September 11, 2014.  (*See id.*).

Plaintiff also alleges that the medical staff did not provide him with catheters during his

time in detention.  (*See id.*).  Specifically, Plaintiff details numerous occasions from September 1

to September 18, 2014 where he went approximately 8-12 hours without receiving catheters from

the medical staff, forcing Plaintiff's bladder to be at maximum capacity for an extended amount

of time and causing Plaintiff severe pain.  (*See id.* at pp. 13-15).  Plaintiff filed several grievances

and requests for catheters.  (*See id.* at pp. 14, 32-33).

---

[1] Because it appears that Plaintiff intended to name these ten parties as Defendants, the Clerk of
Court is directed to add these parties as Defendants to the docket.

Plaintiff further alleges that on or about October 24, 2014, his genitals severely swelled and a nurse entered his cell to obtain a urine sample.  (*See id.* at p. 15).  Thereafter, on October 27th and 29th, medical staff informed Plaintiff that they would refer him to the medical unit for treatment of his swollen genitalia.  (*See id.*).  Plaintiff was not transferred to the medical unit until November 3, 2014.  (*See id.*).  Plaintiff was ultimately diagnosed with a urinary tract infection ("UTI").  (*See id.*).

Finally, on November 11, 2014, Plaintiff claims that he asked a nurse practitioner known as Ms. "T" for catheters so that he could use the bathroom.  (*See id.* at pp. 15-16).  Plaintiff alleges that Ms. "T" explicitly informed Plaintiff that she would not provide him with catheters and that she never returned to his cell with any catheters later that day.  (*See id.* at p. 16).

Plaintiff seeks damages for pain and suffering in an amount to be determined by the Court. (*See id.* at p. 6).  Plaintiff also seeks punitive and exemplary damages against the Defendants.  (*See id.*).  Additionally, Plaintiff filed has filed two motions seeking the appointment of *pro bono* counsel.  (*See* Dkt. Nos. 5 and 9).

### III.    STANDARD FOR *SUA SPONTE* DISMISSAL

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e.  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(l)); *Courteau v. United States*, 287 F. App'x. 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).  To survive the court's screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"[A] court must accept as true all of the allegations contained in a complaint." *Id.*  Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. *See id.*  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*  If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Courts must liberally construe pleadings that are filed *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Thus, "a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (internal quotation marks omitted).  "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making."  *See Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339-40 (3d Cir. 2011) (internal citations omitted).

IV.    **DISCUSSION**

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The Eighth Amendment's prohibition against cruel and unusual punishment obligates jail authorities to provide medical care to inmates.  *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The deprivation must be objectively sufficiently serious, and the defendant must "know[] of and disregard[] an excessive risk to inmate health or safety; the

5

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 834, 837.

To satisfy the objective element of a medical claim, the inmate must assert facts showing that the medical need "has been diagnosed by a physician as requiring treatment or is ... so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted).

The subjective element requires an inmate to show that each defendant acted with deliberate indifference to his serious medical need. Deliberate indifference requires more than mere negligence or lack of due care. *Farmer,* 511 U.S. at 835. "Mere medical malpractice cannot give rise to a violation of the Eighth Amendment." *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990). To allege deliberate indifference, the plaintiff must demonstrate that the defendant was "subjectively aware of the risk" of harm to the plaintiff. *Farmer*, 511 U.S. at 828. The plaintiff must allege acts or omissions that are sufficiently harmful to offend "evolving standards of decency." *Estelle*, 429 U.S. at 106.

For instance, "[w]here prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest." *Monmouth Cnty. Corr. Inst. Inmates*, 834 F.2d at 346 (internal citaions omitted). Likewise, "where knowledge of the need for medical care is accompanied by the intentional refusal to provide that care, the deliberate indifference standard has been met." *Id.* (internal citations omitted). Deliberate indifference is also "demonstrated when prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." *Id.* at 347.

6

### A. Claims against Chris Christie, Gary Lanigan, Robert Buechele, Dan DiBenedetti, and Connie Karch in their Official Capacities

To the extent Plaintiff asserts claims against Defendants Chris Christie, Gary Lanigan, Robert Buechele, Dan DiBenedetti, and Connie Karch, in their official capacities, such claims are barred by the Eleventh Amendment.[2]

The Eleventh Amendment "protects a state or state agency from a suit brought in federal court by one of its citizens regardless of the relief sought, unless Congress specifically abrogates the state's immunity or the state waives its own immunity." *Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2010). Congress has not abrogated the State's sovereign immunity with respect to claims under § 1983. *See Thorpe*, 246 F. App'x at 87. The Eleventh Amendment also immunizes state agencies from suit in federal court and individual officials sued in their official capacities when the state is the real party in interest. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Hussein v. New Jersey*, No. 09-1291, 2010 WL 376609, at *4 (D.N.J. Jan. 26, 2010) (extending immunity to Governor Corzine); *Fitchik v. N.J. Transit Rail Operations*, *Inc.*, 873 F.2d 655, 658 (3d Cir. 1989), *cert denied*, 493 U.S. 850 (1989) (finding state agency entitled to immunity "when a judgment against it would have had essentially the same practical consequences as a judgment against the State itself").

Accordingly, to the extent Defendants Chris Christie, Gary Lanigan, Robert Buechele, Dan DiBenedetti, and Connie Karch are being sued in their official capacities, they are entitled to Eleventh Amendment immunity from suit. All claims for damages against these Defendants in their official capacities are therefore dismissed with prejudice.

---

[2] For purposes of this screening opinion only, the Court presumes that UMDNJ and Rutgers University Behavioral Health Care are not immune from liability under the Eleventh Amendment.

**B. Claims against UMDNJ, Rutgers, Chris Christie, Gary Lanigan, Robert Buechele, and Dan DiBenedetti in their Individual Capacities**

Plaintiff alleges that Defendants UMDNJ and Rutgers, as the entities in charge of all medical care to inmates at SWSP, failed to provide Plaintiff with catheters. (*See* Dkt. No. 1 at pp. 4, 17). Plaintiff contends that Defendant Chris Christie, as the former Governor of New Jersey, failed to protect all citizens of the State. (*See id.* at p. 16). Plaintiff also claims that Defendant Gary Lanigan, as the Commissioner of the NJDOC, failed to issue procedures and policies to safeguard inmates at SWSP. (*See id.* at pp. 16-17). Plaintiff alleges that Robert Buechele, as the Administrator of SWSP, received grievances regarding the medical misconduct committed by "the staff that he is appointed to run." (*See id.* at p. 17). Additionally, Plaintiff alleges that Dan DiBenedetti, as the "main Ombudsman who is in charge of his subordinates," neglected Plaintiff's injuries. (*See id.*). Plaintiff's claims against Defendants UMDNJ, Rutgers, Chris Christie, Gary Lanigan, Robert Buechele, and Dan DiBenedetti appear to be based entirely on supervisory liability.

As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Monell v. New York City Dept. Of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties"). In *Iqbal*, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556

U.S. at 676.  Thus, each government official is liable only for his or her own conduct.

The Third Circuit has held that "'personal involvement can be shown through allegations

of personal direction or of actual knowledge and acquiescence.'" *Argueta v. U.S. Immigration &*

*Customs Enforcement ("ICE")*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Rode v. Dellarciprete*,

845 F.2d 1195, 1207 (3d Cir. 1988)).  Moreover, "[i]t is also possible to establish section 1983

supervisory liability by showing a supervisor tolerated past or ongoing misbehavior." *Id.* (quoting

*Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 n. 3 (3d Cir. 1995)).  In addition, "a supervisor may be

liable under § 1983 if he or she implements a policy or practice that creates an unreasonable risk

of a constitutional violation on the part of the subordinate and the supervisor's failure to change

the policy or employ corrective practices is a cause of this unconstitutional conduct." *Id.* (citing

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).

Here, Plaintiff provides no facts describing how these supervisory Defendants allegedly

violated his constitutional rights.  Plaintiff fails to allege facts to show that these Defendants

expressly directed the deprivation of his constitutional rights or that they created policies which

left subordinates with no discretion other than to apply them in a fashion which actually produced

the alleged deprivation.  In short, Plaintiff has alleged no facts to support personal involvement by

these supervisory Defendants, and simply relies on recitations of legal conclusions such that they

were responsible for their agencies and employees and for developing and applying policies,

practices, and procedures at their respective agencies.  These bare allegations, "because they are

no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

Accordingly, this Court will dismiss without prejudice all claims against Defendants,

UMDNJ, Rutgers, Chris Christie, Gary Lanigan, Robert Buechele, and Dan DiBenedetti, because

9

such claims are based solely on supervisory liability, which is not cognizable in this § 1983 action, pursuant to 28 U.S.C. § 1915(e)(2)(B).

### C.  Claims against Connie Karch and Margaret Reed

Plaintiff alleges that he directly contacted Defendants Connie Karch and Margaret Reed several times regarding the denial of medical services.  (*See* Dkt. No. 1 at p. 10).  In response to his complaints, Plaintiff claims that Ms. Karch "pushed an address" on him instead of "advocating for his rights."  (*See id.*).  Additionally, Plaintiff claims that Ms. Reed informed Plaintiff that she would "forward the information [regarding Plaintiff's complaints] to the appropriate parties" rather than personally intervening.  (*See id.*).

There is no factual support in Plaintiff's complaint that Ms. Karch and Ms. Reed were deliberately indifferent to Plaintiff's medical needs.  Nothing in the complaint suggests that Ms. Karch and Ms. Reed were personally responsible for the denial of Plaintiff's access to catheters and a lower bunkbed.  Additionally, the fact that both Ms. Karch and Ms. Reed responded to Plaintiff's complaints by advising that they would contact the appropriate parties contradicts Plaintiff's allegations that they were deliberately indifferent to his medical needs.  (*See id.*). Moreover, Plaintiff does not allege that Ms. Karch or Ms. Reed failed to contact the appropriate parties.  Accordingly, Plaintiff's claims against Defendants Connie Karch and Margaret Wood shall be dismissed without prejudice.

### D.  Claims against Dr. Ralph Woodward, Nurse Thomas, and Ms. "T"

Plaintiff further contends that he directly contacted Defendants Dr. Ralph Woodward and Nurse Thomas through correspondences notifying them of the ongoing denial of medical services and that these Defendants failed and/or refused to provide the requested services.  (*See* Dkt. No. 1 at p. 17).  Plaintiff also claims that Ms. "T" denied medical care to Plaintiff when she explicitly refused to bring him catheters.  (*See id* at pp. 16-17.).

Here, Plaintiff has sufficiently alleged facts warranting an inference that Dr. Ralph Woodward, Nurse Thomas, and Ms. "T" were deliberately indifferent to his serious medical needs. According to the complaint, Plaintiff had medical orders necessitating the provision of catheters and a lower bunkbed due to his spina bifada. (*See* Dkt. No. 1 at p. 13). Plaintiff claims that when he was not provided with his medical requirements, he directly contacted Dr. Ralph Woodward and Nurse Thomas through correspondence and that these Defendants failed to provide Plaintiff with the requested medical services. (*See id.* at pp. 16-17). Additionally, Plaintiff claims that Ms. "T" intentionally refused to provide him with catheters. (*See id.* at pp. 15-17). Construing all reasonable inferences in Plaintiff's favor, as the Court must do at this preliminary stage, the complaint sufficiently alleges that Defendants Dr. Ralph Woodward, Nurse Thomas, and Ms. "T" knew of Plaintiff's medical condition but denied Plaintiff's requests for access to medical care.[3]

### E.  Motions for Appointment of Counsel

Plaintiff has also filed two motions requesting the appointment of *pro bono* counsel. (*See* Dkt. Nos. 5 and 9). Plaintiff argues that he should be appointed counsel because he only has a tenth grade formal education. (*See* Dkt. No. 5 at p. 1). Additionally, Plaintiff claims that the officers in the administrative segregation unit prevent another inmate with legal knowledge from visiting with Plaintiff. (*See id.*). Plaintiff also argues that the issues involved in his case are complex and will require significant research and investigation and that this case will likely involve conflicting testimony. (*See id.*).

Indigent persons raising civil rights claims have no absolute right to counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). At a minimum, there must be some merit in fact or law to the claims the plaintiff is attempting to assert. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d

---

[3] Once Plaintiff discovers the full name of Ms. "T," Plaintiff can seek to amend his complaint so that she can be properly served.

Cir. 1993).  Once that threshold of merit is crossed, a court determining whether to appoint counsel will considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf.  *See id.* at 155-56, 157 n.5; *see also Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011) (reiterating the *Tabron* factors).

Although Plaintiff has established his indigence and has pled claims of at least arguable merit, this Court finds that the appointment of counsel is not warranted at this time.  This Court reaches this conclusion because Plaintiff's complaint indicates that Plaintiff is able to put forth his claims in a clear fashion and because at this early stage in the proceedings, the Court is unable to determine how much discovery will be needed.  While the Court acknowledges that Plaintiff may be unable to obtain private counsel and that this case may largely rest on credibility determinations, this Court finds that, on balance, these *Tabron* factors weigh against the appointment of counsel at this time. Plaintiff's request for the appointment of counsel is therefore be denied without prejudice.  Plaintiff may reapply for *pro bono* counsel at a later date.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff's claims for damages against Defendants Chris Christie, Gary Lanigan, Robert Buechele, Dan DiBenedetti, and Connie Karch in their official capacities under 42 U.S.C. § 1983 must be dismissed with prejudice as barred by the Eleventh Amendment.   Plaintiff's § 1983 claims against Defendants UMDNJ, Rutgers University Behavioral Health Care, Chris Christie, Gary Lanigan, Robert Buechele, Dan DiBenedetti, Connie Karch, and Margaret Reed in their individual capacities will be dismissed without prejudice

pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1), for

failure to state a claim.  Plaintiff's § 1983 claims against Defendants Dr. Ralph Woodward, Nurse

Thomas, and Ms. "T" shall proceed.  Further, Plaintiff's motion for the appointment of *pro bono*

counsel is denied without prejudice.  An appropriate order follows.

Dated:  February  7 , 2018

**s/Robert B. Kugler**
ROBERT B. KUGLER
United States District Judge